Mike MONCRIEF, County Judge et al., Appellants,

v.

W. B. (Bill) GURLEY, Appellee.

Nos. 18330, 18331.

Court of Civil Appeals of Texas, Fort Worth.

Dec. 4, 1980.

Rehearing Denied Jan. 8, 1981.

Mark White, Atty. Gen. of Texas and Nancy N. Lynch, Asst. Atty. Gen., Austin, Tim Curry, Dist. Atty., Tarrant County and Frederick M. Schattman, Asst. Dist. Atty., Fort Worth, for appellants.

Ray & Wood and Randall B. Wood, Austin, for appellee.

## OPINION

HUGHES, Justice.

Did the voters of Tarrant County abolish the office of County Treasurer in their county in an election held on November 6, 1979? In other words, is House Bill 396 (1979 Tex.Gen.Laws, Ch. 130, p. 251) unconstitutional? By its judgment in the two consolidated cases before us the trial court said that it is unconstitutional and that said "Bill 396 and the action taken pursuant to it are invalid and of no force and effect."

W. B. (Bill) Gurley is the plaintiff who prevailed in the trial court. Mike Moncrief, County Judge of Tarrant County, three of the Tarrant County Commissioners (Richard T. Anderson, Jerry Mebus and A. Lyn Gregory), Jack Benson, Tarrant County Auditor, and Howard Green, Tarrant County Treasurer (all defendants) have appealed. B. D. Griffin (County Commissioner, Precinct Four, Tarrant County), on his own motion, is not included as an appellant. Madrin Huffman, Tarrant County Clerk, a party defendant in the trial court, also has not appealed the judgment.

We affirm.

House Bill 396 reads:

"TARRANT COUNTY—COUNTY AUDITOR AND COUNTY TREASURER—CONSOLIDATION OF OFFICES—ELECTION

"Chapter 130

"H. B. No. 396

"An Act relating to an election in Tarrant County to consolidate the offices of county auditor and county treasurer.

"*Be it enacted by the Legislature of the State of Texas:*

"Section 1. The commissioners court of Tarrant County shall call an election to be held on November 6, 1979, at which the qualified voters of the county shall be permitted to vote for or against the proposition: 'Consolidation of the offices of county auditor and county treasurer in this county.'

"Sec. 2. If a majority of the qualified voters voting on the question vote in favor of the proposition, on the 30th day after the date of the election the office of county treasurer ceases to exist in Tarrant County and all the powers, duties, and functions of the office are transferred to the county auditor. The appointment and compensation of the county auditor shall continue to be governed by general law.

"Sec. 3. The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each

house be suspended, and this rule is hereby suspended, and that this Act take effect and be in force from and after its passage, and it is so enacted."

The election was held pursuant to said House Bill 396. Appellants contend that Tex.Const. art. III, sec. 64, gives constitutional authorization for House Bill 396. (Appellee Gurley contends to the contrary.) It reads as follows:

"§ 64. Consolidation of governmental offices and functions in counties and political subdivisions

"Sec. 64. (a) The Legislature may by special statute provide for consolidation of governmental offices and functions of government of any one or more political subdivisions comprising or located within any county. Any such statute shall require an election to be held within the political subdivisions affected thereby with approval by a majority of the voters in each of these subdivisions, under such terms and conditions as the Legislature may require.

"(b) the county government, or any political subdivision(s) comprising or located therein, may contract one with another for the performance of governmental functions required or authorized by this Constitution or the Laws of this State, under such terms and conditions as the Legislature may prescribe. No person acting under a contract made pursuant to this Subsection (b) shall be deemed to hold more than one office of honor, trust or profit or more than one civil office of emolument. The term 'governmental functions,' as it relates to counties, includes all duties, activities and operations of statewide importance in which the county acts for the State, as well as of local importance, whether required or authorized by this Constitution or the Laws of this State."

Tex.Const. art. XVI, sec. 44, reads:

"The Legislature shall prescribe the duties and provide for the election by the qualified voters of each county in this State, of a County Treasurer and a County Surveyor, who shall have an office at the county seat, and hold their office for four years, and until their successors are qualified; and shall have such compensation as may be provided by law. As amended Nov. 2, 1954."

■ Obviously, a County Treasurer is a constitutional officer. A constitutional office may not be abolished without constitutional authorization. *Cowell v. Ayers*, 110 Tex. 348, 220 S.W. 764, 765 (1920). *Cowell* plainly states:

"The Legislature is without power to abolish constitutional offices, or to shorten terms of office which are fixed by the Constitution. The principle invalidating such legislative acts is well stated by the Supreme Court of Mississippi to be that—

" 'The framers of the organic law, by creating the office and specifying the term, have unmistakably indicated their will: First, that the state shall always have such an officer; and, secondly, that the duration of the term of each incumbent shall depend not on legislative will, but on the solid basis of an ordinance that cannot be changed save by a change in the Constitution itself.' *Fant v. Gibbs*, 54 Miss. [396 at] 403, 404."

Is section 64 such a change?

We must ask a further question: Did the Legislature and the voters of Texas intend, in passing section 64, that the constitutional status of *all* county officers be abolished? We would have to answer that question "yes" in order to hold that section to authorize abolition of the office of County Treasurer. Such intention is not clearly stated therein. We must presume that no such intention existed.

■ In determining intent we must look to the face of the statute and find its intent in its language and not elsewhere. *Simmons v. Arnim*, 110 Tex. 309, 220 S.W. 66 (1920). *Railroad Commission of Texas v. Miller*, 434 S.W.2d 670 (Tex.1968).

■ "Political subdivisions *comprising* or located within any county" (emphasis ours) is the key phrase we must consider, and "comprising" is the key word. Does the phrase above quoted in section 64(a) mean

that "county government" is intended to be included as a "political subdivision comprising or located within any county." We hold it not to be so included.

Section 64(a) and (b) were passed at the same time in House Joint Resolution No. 60. We must consider them together. Subsection 64(a) does not have the term "county government" used. Subsection 64(b) recites the term "county government" and then in the same sentence states: "*or* any political subdivision *comprising* or located therein." (Emphasis ours.) Statutory construction indicates to us that the use of "county government" in (b), after its absence in (a), plus the "or" following it, means a legislative intent for it not to be included in the term "political subdivision comprising or located therein" in either (b) or (a).

We must consider the absence of that term in (a) in arriving at legislative intent. *Eddins-Walcher Butane Company v. Calvert*, 156 Tex. 587, 298 S.W.2d 93 (1957). *Lyles v. Oheim*, 142 S.W.2d 959 (Tex.Civ. App.—Fort Worth 1940, writ granted), aff'd at 138 Tex. 333, 159 S.W.2d 102 (1942).

 We conclude that House bill 396 is unconstitutional because there is no constitutional authority to warrant its provision for the abolition of a constitutional county office.

We overrule point of error one in cause no. 18331. Points of error one and two in cause no. 18330 are therefore moot and we need not consider them.

Affirmed.

MASSEY, C. J., concurs.

MASSEY, Chief Justice, concurring.

While agreeing with all that is written by Justice HUGHES in the opinion of the court, I am moved to refresh the reader of what he already knows about Constitutional Law. By the Constitution of Texas the constitutional office of County Treasurer, whether of Tarrant or any other county, cannot be abolished save by vote of the electorate of the entire state by way of a constitutional amendment.

Abolishment of the constitutional office of county Treasurer of Tarrant County can be accomplished by that method and not otherwise. Required, of course, would be that the objective to be accomplished by the voters' adoption of an amendment be clear and unambiguous.

Such abolishment could not be delegated to the legislature of the state, nor by a delegation by it to the voters of Tarrant County. To accomplish abolishment would be non-delegable.

That apparently desired by the voters of Tarrant County can be accomplished, or in any event attempted, by adhering to the requirements of law governing the mode of amending our Texas Constitution. As of the time of trial below, before retired Judge Tipps of Wichita Falls who was appointed for the purpose, that had not been accomplished. There is no doubt that he would have preferred that his ruling and judgment find favor with the populace; but to depart from the sworn duty of a judge to support the Constitution of Texas, and to rule to find favor in derogation of that duty, was something he could not abide.

Our Texas Constitution will remain secure so long as we can continue to find judges of like integrity.